UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-cv-61136-LEIBOWITZ/AUGUSTIN-BIRCH

**HYBRID PHARMA LLC**,

    *Plaintiff*,

v.

**MATTHEW KNISPEL, MARK WHITTEN and ROBERT DIFIORE**,

    *Defendants.*

_____/

## SEALED ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

THIS MATTER was referred to United States Magistrate Judge Panayotta Augustin-Birch for a Report and Recommendation on Defendants' Joint Motion for Summary Judgment (the "Motion") [ECF Nos. 127, 154]. Judge Augustin-Birch has issued her Report and Recommendation (the "R&R"), recommending that the Court grant Defendants' Motion. [ECF No. 167]. Plaintiff Hybrid Pharma LLC ("Hybrid Pharma") submitted objections to the R&R, and Defendants Matthew Knispel, Mark Whitten, and Robert DiFiore (collectively, the "Defendants") submitted a Response to Plaintiff's objections. [ECF Nos. 171, 176]. After careful review of the filings, the applicable law, and the record, the Court adopts the R&R [ECF No. 167] in its entirety and writes below to expand upon its reasoning.

### PROCEDURAL BACKGROUND

Defendants moved this Court for Summary Judgment on January 29, 2024, arguing that (1) Hybrid Pharma failed to state a cognizable "class of one" Equal Protection claim under 42

U.S.C. § 1983, for failure to prove it was intentionally treated differently by Defendants and failure to identify a valid comparator; (2) Defendants are entitled to a qualified immunity defense; and (3) sovereign immunity under the Eleventh Amendment bars Hybrid Pharma's official capacity claims. [Defendants' Joint Mot. for Summary Judgment, ECF No. 127, at 4–16]. Judge Augustin-Birch recommended to this Court that Summary Judgment be granted in favor of the Defendants on the grounds that Hybrid Pharma failed to identify sufficient comparators for a "class of one" claim, and therefore Hybrid Pharma is not entitled to relief on any of its claims. [R&R at 11].

## LEGAL STANDARDS

**Adoption of a Report and Recommendation:** "In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (cleaned up). The objections must also present "supporting legal authority." L. Mag. J.R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783–84 (cleaned up). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Id.* at 784 (cleaned up). The Court has reviewed *de novo* Hybrid Pharma's objections to the R&R and, for the reasons stated below, the Court finds the resolution of the issues as recommended by Judge Augustin-Birch to be sound and well-reasoned. The Court therefore adopts the R&R in its entirety and incorporates its findings herein.

**Summary Judgment:** A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000).  A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.  A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving

3

party." *Rice-Lamar*, 232 F.3d at 840 (*citing Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Supreme Court has allowed equal protection claims brought by a "class of one" where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1233 (11th Cir. 2022).

Judge Augustin-Birch found that Hybrid Pharma's evidence that its two proffered comparators, OPS and KRS, were similarly situated was insufficient, thus destroying the "class of one" claim. R&R at 5–11. In its objections, Hybrid Pharma argued that OPS and KRS were similarly situated because they both are "(i) located within the same regulatory jurisdiction as Plaintiff; (ii) engaged in the same business as Plaintiff; (iii) hold or held the same state licenses and federal registrations as Plaintiff; and (iv) have the same facility setups as Plaintiff." [Pl. Objections to the Sealed Report and Recommendation, ECF No. 171 at 8–9]. Hybrid Pharma fundamentally misunderstands the Eleventh Circuit's test for whether a comparator is similarly situated. Thus, this Court will dispense with each of Hybrid Pharma's arguments in turn.

The *Griffin* Standard and its Application

The Eleventh Circuit in *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007) laid out the standard for courts to determine whether a comparator is similarly situated in a "class of

4

one" claim. The *Griffin* Court grappled with the appropriate standard for comparators, warning that "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Id.* at 1203. Understanding that government regulators often face complex decisions, the Eleventh Circuit commanded district courts to evaluate "class of one" claims "in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision. Accordingly, when dissimilar governmental treatment is not the product of a one-dimensional decision . . . the 'similarly situated' requirement will be more difficult to establish." *Id.* at 1203–04 (noting that courts can only analyze comparators at a high level of abstraction where challenged governmental decisions are one-dimensional).

Specifically, comparators must be "very similar indeed[,]" as plaintiffs cannot "simply rely on broad generalities in identifying a comparator." *Id.* at 1204, 1205 (finding that nurses were not similarly situated where, despite similar histories of problems with coworkers as compared to the plaintiff, the comparators had better records on job performance and tardiness) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316–19 (11th Cir. 2003)). As such, a similarly situated comparator must be "prima facie identical in all relevant respects." *Id.* at 1204 (citing *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006)). Simply put, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Id.* at 1207 (citing *E & T Realty v. Strickland,* 830 F.2d 1107, 1109 (11th Cir.1987)).

Applying the *Griffin* standard "with rigor[,]" as this Court is required to do, Hybrid Pharma plainly fails to show that either OPS or KRS are similarly situated. *Id.*; *see also Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008).

First, the standard Hybrid Pharma asks this Court to use to find OPS and KRS similarly situated is a clear and obvious example of a "too broad" definition. If this Court were to use the standard Hybrid Pharma sets out, *supra* at 4, it would encapsulate nearly *all* drug compounders subject to the same regulations. Such a standard not only is too broad, but also wholly misunderstands the purpose of the similarly situated test. The test exists so plaintiffs can show that despite similar *actions* between them and a comparator, they were treated differently without good reason. Hybrid Pharma's proffered standard would not further the purpose of the test because it would only show that a plaintiff was treated differently than a comparator in the same industry *regardless* of whether the underlying actions were the same.

Next, under the Eleventh Circuit standard, Hybrid Pharma has offered insufficient evidence to find that either OPS or KRS are similarly situated, as Judge Augustin-Birch concluded. *Griffin* would suggest that Hybrid Pharma could show OPS or KRS were similarly situated if they, for example, engaged in the *same behavior* that was deserving of deficiencies from the Florida Department of Health ("FDOH") regulators, *but only Hybrid Pharma received deficiencies*. Judge Augustin-Birch identified numerous FDOH violations of Hybrid Pharma's facility, and Hybrid Pharma has pointed to *no* evidence that OPS or KRS had the same, or even similar, violations but did not receive deficiencies. [R&R at 6–8].

Hybrid Pharma argues that they and OPS are similarly situated because an FDOH inspection of both entities' documents regarding an uncertified anteroom showed that they received deficiencies and OPS did not. [Pl. Objections to the Sealed Report and Recommendation at 10]. Glaringly absent from this argument are *any facts in the summary judgment record to establish that either both Hybrid Pharma and OPS were deserving of deficiencies, or that neither were*. It is entirely conceivable that Hybrid Pharma received a deficiency and OPS did not because

6

FDOH's investigation found that Hybrid Pharma's anteroom did not meet regulatory standards while OPS's anteroom did, even if both produced the same type of documents. Hybrid Pharma offers no evidence its anteroom and OPS's anteroom were substantively the same; thus this argument is meritless.

Hybrid Pharma's remaining objections to the R&R all hang their hat on the same issue – that OPS and KRS are similarly situated because they were similar companies subject to the same regulations. As discussed, such an understanding of "class of one" jurisprudence is misguided (and borders on frivolous) because it glosses over Judge Augustin-Birch's finding that FDOH treated Hybrid Pharma differently than OPS and KRS because Hybrid Pharma engaged in worse conduct than OPS and KRS.

Hybrid Pharma cited just one clearly distinguishable case to argue that its standard is the correct one – *Mad Room, LLC v. City of Miami*, No. 21-CV-23485, 2023 WL 8598151 (S.D. Fla. Dec. 12, 2023), discussed *infra*. Beyond *Mad Room*, Hybrid Pharma presented this Court with no case that would support its definition of "similarly situated." After an extensive review of cases in the Eleventh Circuit, this Court is convinced that surface level similarities are insufficient for a comparator to be considered "similarly situated" when the comparator's underlying actions are dissimilar. *See, e.g. Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1234 (11th Cir. 2022) (finding comparators were not similarly situated where the government's investigation was instigated by anonymous complaint against the plaintiff, while other entities identified were not the subject of the same complaints); *Palm Beach Polo, Inc. v. Vill. of Wellington*, No. 21-12054, 2022 WL 17998533, at *3 (11th Cir. Dec. 30, 2022) (finding plaintiff was not similarly situated to a comparator where plaintiff had more violations than the proffered comparator); *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285-86 (11th Cir. 2021)

7

(finding comparators were not similarly situated where their projects were subject to different funding models); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1265 (11th Cir. 2010) (finding comparators were not similarly situated where plaintiff's suggested comparators were fully compliant with relevant city codes); *Safety Harbor Powersports, LLC v. City of Safety Harbor, Fla.*, No. 8:23-CV-2399-VMC-UAM, 2024 WL 3400278, at *5 (M.D. Fla. July 12, 2024) (finding comparator that was close in geographic proximity and notified of code violations was not similarly situated because it did not face the *same* code violations as the Plaintiff); *VTS Transportation, Inc. v. Palm Beach Cnty.*, No. 9:15-CV-80560, 2016 WL 4250683, at *4 (S.D. Fla. Feb. 4, 2016) ("The Court finds Plaintiffs' allegation that both they and Rasier are performing VFH services to be overly broad and insufficient to show that they are 'similarly situated' for purposes of an equal protection claim."); *Decker v. Citrus Cnty.*, No. 5:15-CV-24-OC-30PRL, 2015 WL 6956545, at *5 (M.D. Fla. Nov. 10, 2015) (dismissing "class of one" claim because "[t]he only fact Plaintiff relies upon to demonstrate that [the plaintiff's property] was similarly situated to [the alleged comparators is] that the developments are commercial waterfront properties that are water dependent. This is simply too broad a criteria to fulfill the similarly-situated requirement.").

Hybrid Pharma does not come close to meeting the *Griffin* standard and fails to convince this Court that OPS and KRS are similarly situated. Judge Augustin-Birch's R&R is correct to grant summary judgment in favor of the Defendants.

<u>*Mad Room* is Distinguishable</u>

Hybrid Pharma claims that *Mad Room* is highly instructive and that Judge Augustin-Birch "refused to acknowledge and apply the standard set forth in this decision." [Pl. Objections to the

Sealed Report and Recommendation at 8]. In fact, Hybrid Pharma's reliance on *Mad Room* is unsound. The case at hand and *Mad Room* are dissimilar in multiple relevant respects.

First, the Court in *Mad Room* dealt with a motion to dismiss, and therefore a lower standard than at summary judgment, where the Plaintiff alleged the City of Miami was irrationally discriminating against them after the Plaintiff's owner supported the Commissioner's political opponents. *Mad Room, LLC*, 2023 WL 8598151, at *1. The Plaintiff alleged that the City harassed them through "constant inspections and 'walk-throughs,' that appeared as a drug bust to the larger public due to the sheer amount of officers attending each raid— usually including 10 or more officers wearing bulletproof vests and often fully armed." *Id.* Plus, the inspections allegedly escalated to "include multiple code enforcement raids, comprised of dozens of police officers, fire department officials, code enforcement officials and inspectors with the Division of Alcohol Beverages and Tobacco, Bureau of Law Enforcement," during the busiest nights of the week. *Id.* The Plaintiff identified three City policies which they said were passed to discriminate and disproportionately enforced against supporters of the Commissioner's political opponent, including the Plaintiff. *Id.* at *2.

To support its "class of one" claim, the plaintiff in *Mad Room* identified numerous comparators it claimed were similarly situated. *Id.* at *8–9. First, the Plaintiff identified three businesses close in geographic proximity to the Plaintiff that had their certificates of use revoked for "life safety issues" but were implicitly allowed to operate in violation of the law by the City, unlike the Plaintiff (the "Life Safety Comparators"). *Id.* at *8. Next, the Plaintiff identified one establishment which was permitted to operate as a liquor store while Plaintiff was denied an Outdoor Dining Warrant because it would be selling alcohol within three-hundred feet of a religious facility even though the liquor store was in the same building as that religious facility.

9

*Id.*  The Plaintiff also identified thirteen other establishments within three-hundred feet of a religious facility that could sell alcohol (the "Outdoor Dining Comparators"). *Id.*  In other words, the Plaintiff identified fourteen businesses that were engaged in the same underlying activity (selling alcohol near a religious facility), yet the Plaintiff was the only business forbidden from selling alcohol.  Finally, the Plaintiff also alleged that it was subject to an extensive process to obtain an alcohol warrant while its competitor was granted "concession after concession from the City," in their effort to serve alcohol (the "Alcohol Warrant Comparator"). *Id.* at *9.  The *Mad Room* Plaintiff emphasized that the competitor was close in geographic proximity, engaged in the same business and had the same license from the city, was granted the same alcohol warrant, and served food and alcohol outside, just as the Plaintiff did.  *Id.*  The *Mad Room* Plaintiff offered the Court no evidence that it, unlike its comparators, engaged in any behavior that justified the City to take corrective action against it.  *Id.*

Hybrid Pharma claims that the *Mad Room* Court "held that the plaintiff had established a 'similarly situated' comparator with *only* the following: (i) the comparator's name and location in the same jurisdiction; (ii) the comparator was engaged in the same business; (iii) the comparator held the same license; and (iv) the comparator has a similar facility setup."  [Pl. Objections to the Sealed Report and Recommendation at 8 (emphasis in original)].  Hybrid Pharma appears to be referring to the Alcohol Warrant Comparator in its argument.  While Hybrid Pharma is correct that the *Mad Room* Court found the Alcohol Warrant Comparator to be similar to the Plaintiff, it omits an important distinguishing fact:  There was no evidence in *Mad Room* that the Plaintiff was undeserving of the alcohol warrant, while here, Hybrid Pharma (unlike OPS and KRS) received numerous deficiencies which explain the increased number of FDOH citations against Hybrid

10

Pharma – arguably the most relevant respect to Hybrid Pharma's "class of one" claim.[1] This fact alone distinguishes *Mad Room*, where there was no allegation that the Plaintiff had been found to be violating any regulations at a rate higher than the comparators.

Hybrid Pharma continues the comparison with *Mad Room*, arguing that OPS and KRS are similarly situated because they are similar types of businesses that held the same licenses, were subject to the same regulations, and had the same facility setups. [Pl. Objections to the Sealed Report and Recommendation at 8–9]. This argument *continues to ignore the fact* that Hybrid Pharma, unlike OPS and KRS, was found to have deficiencies by FDOH regulators after multiple inspections. *Id.* Meanwhile, the Life Safety Comparators in *Mad Room* were found to be similarly situated (at the Motion to Dismiss phase) because they *all were cited* for "life safety issues," just as the Plaintiff. *Mad Room, LLC*, 2023 WL 8598151, at *8. Hybrid Pharma admits that OPS did not receive any deficiencies after inspections, which may explain why the FDOH took action against Hybrid Pharma and not OPS. [Pl. Objections to the Sealed Report and Recommendation at 9–10].

---

[1] Additionally, Hybrid Pharma claims that "the [*Mad Room*] Court found the alleged comparator was 'identical' in 'all respects relevant[.]'" [Pl. Objections to the Sealed Report and Recommendation at 8]. The only two times the Court used the phrase "all respects relevant" is when it cited the *Plaintiff's* language in its amended complaint:

> Cubaocho is thus **identical** to Ball & Chain in **all respects relevant** to compliance with the service of alcoholic beverages yet was treated differently. [Amended Complaint] ¶ 75 n.3.

> *See, e.g.*, Amended Complaint ¶ 75 n.3 ("Cubaocho . . . . is thus **identical** to Ball & Chain in **all respects relevant** to compliance with the service of alcoholic beverages yet was treated differently.")

*Mad Room, LLC*, 2023 WL 8598151, at *9 (emphasis added).

Lastly, the *Mad Room* Plaintiff and the Outdoor Dining Comparators all were in violation the same regulation – serving alcohol near a religious facility. *Mad Room*, 2023 WL 8598151, at *8. Here again, there is no evidence *that OPS or KRS engaged in the same actions* that led to Hybrid Pharma receiving deficiencies and citations. Hybrid Pharma's argument that it is similarly situated to OPS because "both Plaintiff and OPS were inspected on the same identical inspection issues and produced the same documents regarding training and anteroom certification; yet, Plaintiff received deficiencies and OPS did not," is unavailing for this reason. [Pl. Objections to the Sealed Report and Recommendation, ECF No. 171 at 10]. Hybrid Pharma does not offer any evidence that it and OPS engaged in the same violation conduct and thus both *deserved* deficiencies, but only it (Hybrid Pharma) received a deficiency, which would be analogous to *Mad Room*. Thus, a review of the Outdoor Dining Comparators affirms this Court's view that OPS and KRS are not similarly situated to Hybrid Pharma.

Hybrid Pharma has failed to meet its burden to establish that OPS and KRS are similarly situated and incorrectly rely on a clearly distinguishable case. Therefore, summary judgment must be granted in favor of the Defendants.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Magistrate Judge Augustin-Birch's Report and Recommendation [**ECF No. 167**] is **AFFIRMED AND ADOPTED**.

2. Defendant's Joint Motion for Summary Judgment [**ECF No. 127**] is **GRANTED**.

3. The parties shall submit briefing on whether any of the sealed docket entries [ECF Nos. 65, 70, 72, 73, 96, 138, 155, 159, 167, 171], including this Order, shall remain sealed, with citations to applicable law, **no later than September 13, 2024.** This Court will

then direct the Clerk of Court to close this case.  <u>Failure to submit briefing *as to each docket entry* will result in this Court unsealing all sealed docket entries</u>.

**DONE AND ORDERED** in the Southern District of Florida on August 30, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:   counsel of record